May 6, 2008

Hon. Lewis A. Kaplan
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

By ECF

Re: USA v. Garza
    07 Cr. 260 (LAK)

Dear Judge Kaplan;

In response to the Presentence Report:

Paragraph 41, and all related paragraphs - defendant believes he has met all 5 criteria for a 2 - point reduction in his Total Offense level, as well as eligibility for a sentence below the 10 year mandatory minimum sentence, pursuant to USSG @ 2D1.1 and 5C1.2. On April 16, 2008, defendant met with the Government and provided information concerning the case, and its relevant conduct. Garza informed the Government he obtained the 7 boxes containing 100 kilograms of cocaine at a truck stop in Georgia at an exit # 147. An individual named Nelson Garcia [who was also a truck driver for USACarriers] recruited Garza for the narcotics transportation job, and at all times directed Garza's activities. Garza was in the process of delivering a regular load of merchandise when he was contacted by Garcia, and recruited to receive the 7 boxes of cocaine, and deliver the cocaine according to Garcia's directions.

At the truck stop the cocaine was given to Garza by two men driving a truck from McAllen, Texas. With Garza's truck now containing the cocaine as well the regular freight, Garza drove to Cranberry, New Jersey, and there telephoned Nelson Garcia to receive further instructions. Thereafter, Garcia sent a man to meet Garza at a New Jersey warehouse, where the man took possession of the 7 boxes of cocaine from Garza. Garza then drove to a New Jersey

truck stop, and then to Ohio to pickup additional freight.  After the delivery Garza called Nelson Garcia to confirm the transfer of the cocaine at the warehouse.  On his subsequent travels Garza was pulled over twice for "traffic stops."

The Government and the defendant presently disagree as to whether Garza had another person in his truck with him for the delivery sequence.  Garza denies the presence of the other, and the Government believes another was present.  If necessary, Mr. Garza requests a hearing on this issue as he is adamant that he was at all times alone in his truck, and wants to qualify for the "safety valve."

Defendant believes the law of sentencing is now as follows.  In Blakely v. Washington, 124 S.Ct. 2531 (2004), the Supreme Court ruled that the Washington State sentencing structure violated the Sixth Amendment right to trial by jury because it permitted a Judge to impose a sentence in excess of the statutory maximum.  The Blakely, supra. decision repeats the rule expressed in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.  The January 12, 2005, Supreme Court decision in USA v. Booker, and USA v. Fanfan, 125 S. Ct. 738 (2005), concluded that the Sixth Amendment as construed in Blakely v. Washington, supra. applies to the Federal Sentencing Guidelines.  The Booker Court held the mandatory application of the sentence guidelines to be unconstitutional.

In Booker, supra. the Supreme Court further held that 18 USC @ 3553(b)(1) which makes the Federal Sentencing Guidelines mandatory,  is incompatible with the Sixth Amendment jury trial holding and therefore must be severed and excised from the Sentencing Reform Act of 1984.  Section 3742(e), which depends upon the Guidelines mandatory nature, also must be severed and excised.   While the Guidelines no longer play a mandatory role at sentencing judges are required to "consider the Guidelines' sentencing range established for ... the applicable category of offense committed by the applicable category of defendant' @3553(a)(4), the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims @@3553(a)(1),(3),(5)-(7) (main ed. And Supp. 2004)."  United States v. Booker, 125 S. Ct. 738, 764 (2005).

In sentencing defendants, district courts should consider the factors set forth in 18 USC @ 3553(a). The statute provides that the sentencing "court shall impose a sentence sufficient but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and the statute then sets forth 7 specific considerations:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed -

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    C) to protect the public from further crimes of the defendant;

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of services available;

(4) the kinds of sentence and the sentencing range established [in the Sentencing Guidelines];

(5) any pertinent policy statement [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

On December 10, 2008, in <u>Kimbrough v. United States</u>, 128 S.Ct. 558 (2007), the United States Supreme Court ruled that the Guidelines are but one factor, with no primacy, that the District Court must consider in its "individualized assessment" regarding sentencing. The Guidelines are just the "starting point and the initial benchmark" in the sentencing calculus.

Mr. Garza's incarceration at the MDC has been difficult. He has been incarcerated continuously since the date of his arrest on May 9, 2007. The MDC is overcrowded. The bathroom consists of 1 shower head, 1 toilet, and 1 face basin with 2 faucets. The prison area has a roach and fly problem. No exterminator is ever called in. Defendant has feared infection from co-mingled inmates with HIV. The dorm has no ventilation. Mold and mildew are ever present

on the prison interior walls.  The mops used to clean the bathroom are washed in the same washing machine used to wash the clothes.  Mr. Garza cannot get bleach to disinfect this.   He has been ill for much of  his incarceration.

     Mr. Garza is the father of 2 children Jorge, age 7, and Carlos age 5.  He has never been arrested before.   Garza's wife Erika has been treated for depression since March 2006, and this has been made worse because of defendant's arrest.  In part, medical bills were a factor in defendant agreeing to become involved in this narcotics transportation, as was a cocaine addiction Garza cannot seem to defeat on his own.  The Garza family is now being financially supported by Erika Garza's father.  However, beginning in 2000, Garza had a continuous record of employment, and support for his family.

     Defendant requests a narcotics program he can attend while in prison, and a recommendation from your Honor that he be sent to a Texas prison so he can be near his wife, and young children.

     Mr. Garza understands he has destroyed his life by this criminal episode, and the lives of his family.  However, Garza respectfully requests the mercy of this Court, and as short a prison term as possible.

     Also, enclosed are letters from defendant Garza's his family, and friends.

                       Respectfully,


                       B. Alan Seidler


cc:    AUSA Brendan McGuire
        Probation Officer Robert Flemen
        Jorge Garza
bas/ee