```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA          :

        -v-                       :     07 Cr. 260 (LAK)

JORGE LUIS GARZA,                 :

                                  :
          Defendant.
                                  :

- - - - - - - - - - - - - - - - - X
```

**GOVERNMENT'S SENTENCING MEMORANDUM**



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 15, 2008

BY HAND DELIVERY

The Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
500 Pearl Street, Room 1310
New York, New York 10007

    Re:    **United States v. Jorge Luis Garza**
                **07 Cr. 260 (LAK)**

Dear Judge Kaplan:

      The Government respectfully submits this letter in advance of the sentencing in this case, scheduled for June 2, 2008, and in opposition to the defendant's sentencing submission, dated May 6, 2008, requesting a sentence below the sentencing range set forth in the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") of 135 to 168 months' imprisonment. For the reasons stated below, the Government submits that a sentence within the applicable Guidelines range is appropriate and should be imposed here.

I.    **Offense Conduct**

      On November 9, 2007, Garza pled guilty to conspiring to distribute and possess with intent to distribute 5 kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 846, 812, 841(a)(1), and 841(b)(1)(A).

      As set forth in the Presentence Report ("PSR"), on November 30, 2006, Garza delivered 100 kilograms of cocaine to a cooperating witness working with the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") and posing as a New York-based drug trafficker (the "CW"). Garza delivered the 100 kilogram shipment on behalf of a Mexican-based cocaine supplier with whom the CW had discussed narcotics trafficking in the past. See PSR ¶¶ 11-15. On the day of the delivery, the supplier told the CW over the telephone that he had provided the CW's telephone number to the truck drivers who would be delivering the drugs. Shortly thereafter, the CW received a phone call from Garza who informed the CW that he should meet Garza at a particular exit of the New Jersey Turnpike. Garza and the CW ultimately agreed to meet at a parking lot in Cranbury, New Jersey later that day. At the meeting, the CW walked over to the tractor-trailer truck that Garza had described to him on the phone, and a rear

door on the tractor portion of the truck opened. Garza then handed the CW through the rear door of the truck seven white cardboard boxes, which contained the 100 kilograms of cocaine. As soon as Garza handed over the last box of cocaine, the truck immediately pulled out of the parking lot.

ICE agents followed the truck out of the parking lot to a nearby truck stop in New Jersey. At the truck stop, ICE agents observed a second individual who was in the truck with Garza walk away from the truck and not return to the truck. Shortly thereafter, Garza began to drive out of the truck stop and was pulled over by the New Jersey state police. The state police identified Garza but did not place him under arrest. Garza was subsequently arrested by ICE agents on May 9, 2007. See PSR ¶ 28.

## II.     Sentencing Guidelines Calculation

As set forth in the PSR, in the Government's view, the base offense level is 36 because the defendant conspired to distribute between 50 and 150 kilograms of cocaine. See PSR ¶ 4(a). Because the defendant pled guilty in a timely manner and clearly demonstrated acceptance of responsibility, a three level reduction is warranted. See PSR ¶ 4(b). Accordingly, Garza has a total offense level of 33 and is in Criminal History Category I, yielding a Guidelines range of 135 to 168 months' imprisonment. See PSR ¶ 4(d)-(e). In addition, Title 21, United States Code, Section 841(b)(1)(A) requires a statutory minimum term of imprisonment of 120 months. The Probation Office's analysis of the Sentencing Guidelines is identical to that of the Government. See PSR ¶¶ 31-44.

Garza maintains that he has satisfied the safety-valve criteria, and therefore deserves a two-level reduction, pursuant to U.S.S.G. § 2D1.1(b)(9), and should be sentenced without regard to the 10 year statutory mandatory minimum. (May 6, 2008 Sentencing Letter at 1-2). The Government disputes Garza's eligibility for safety-valve relief on the grounds that he has not "truthfully provided the Government all information and evidence" concerning the charged conspiracy, as required by 18 U.S.C. § 3553(f)(5) and U.S.S.G. § 5C1.2(a)(5). In particular, at a safety-valve proffer with the Government on April 16, 2008, Garza claimed that there was never anyone in the tractor-trailer truck with him before, during or after his delivery of the 100 kilograms of cocaine to the CW. As is evident from the above description of the offense conduct, the Government submits that this claim is false, and the Government is prepared to proceed to a Fatico hearing to resolve this issue.

## III.    A Sentence Within the Applicable Guidelines Range of 135 to 168 Months Is Appropriate

Considering the factors set forth in Section 3553(a), the Government respectfully submits that a sentence within the Guidelines range of 135 to 168 months' imprisonment is appropriate to do justice in this case.

2

A.      **Applicable Legal Principles**

The United States Sentencing Guidelines provide strong guidance to the Court in light of United States v. Booker, 543 U.S. 220 (2005) and United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). Although Booker held that the Guidelines are no longer mandatory, it held also that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. at 264. As the Supreme Court recently stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark." Gall v. United States, 128 S. Ct. 586, 596-97 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant" (§ 3553(a)(1)); the four legitimate purposes of sentencing (§ 3553(a)(2)); "the kinds of sentences available" (§ 3553(a)(3)); the Guidelines range itself (§ 3553(a)(4)); any relevant policy statement by the Sentencing Commission (§ 3553(a)(5)); "the need to avoid unwarranted sentence disparities among defendants" (§ 3553(a)(6)); and "the need to provide restitution to any victims" (§ 3553(a)(7)). Gall v. United States, 128 S. Ct. at 597.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)     to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." Gall, 128 S. Ct. at 597 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," Rita v. United States, 127 S. Ct. 2456, 2463 (2007), and the Guidelines are "the product of careful study based on extensive empirical

3

evidence derived from the review of thousands of individual sentencing decisions," Gall, 128 S. Ct. at 595; see also Rita v. United States, 127 S. Ct. at 2464. To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Gall, 128 S. Ct. at 597.

Here, the Guidelines range is 135 to 168 months' imprisonment. The Court should impose a sentence within the Guidelines range.

### B.  Discussion

Garza's delivery of 100 kilograms of cocaine across the country on behalf of a significant Mexican-based narcotics trafficker is clearly a serious crime that warrants a substantial penalty. Garza served as a critical link between the drug supplier in Mexico and the CW posing as a customer in New York. His conduct was the product of considerable planning and deliberation as he drove across the country with the 100 kilogram cocaine shipment in his truck and arranged the meeting with the CW in a quiet location to avoid detection by law enforcement. Moreover, the evidence suggests that Garza was not a novice in making narcotics deliveries as he was entrusted with delivering nearly $2 million of cocaine to a new customer. In addition, he instructed the CW where to meet him and completed the transfer of the 7 boxes of cocaine efficiently and without incident.

Garza maintains that he should receive a reduced sentence based upon (1) the conditions of his confinement at the Metropolitan Detention Center (the "MDC"), and (2) challenging family circumstances related to his wife's depression and the family's declining financial situation following his arrest. While pre-sentence conditions of confinement may serve as a basis for a downward departure in appropriate cases, see United States v. Carty, 264 F.3d 191, 196 (2d Cir. 2001), the Government submits that this is not such a case. Garza makes general complaints about conditions at the MDC that are not unique to him and that do not rise to such a level as to warrant a departure under the Sentencing Guidelines or a sentencing reduction under 18 U.S.C. § 3553(a). Furthermore, pursuant to U.S.S.G. § 5H1.6, family circumstances are not ordinarily relevant in determining whether a Guidelines departure is proper. Garza's family circumstances are not sufficiently exceptional to warrant any type of sentencing reduction.

IV.   Conclusion

Accordingly, for the foregoing reasons, the Government respectfully submits that a sentence of 135 to 168 months' imprisonment is an appropriate sentence pursuant to 18 U.S.C. § 3553(a), and the Government requests that the Court impose a sentence within that range.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney

By: *[signature]*
Brendan R. McGuire
Assistant United States Attorney
(212) 637-2220

cc:   B. Alan Seidler, Esq. (by fax)
      Counsel for Jorge Luis Garza

      Robert Flemen
      U.S. Probation