UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| - v. - | : |
| JORGE LUIS GARZA, | : |
| Defendant. | : |

07 Cr. 260 (LAK)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**

MICHAEL J. GARCIA
*United States Attorney for the*
*Southern District of New York*
*Attorney for the United States*
*of America*

JOHN P. CRONAN
Assistant United States Attorney,
*Of Counsel*



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York  10007*

July 1, 2008

**By Hand and Filed Electronically**

The Honorable Lewis A. Kaplan
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1310
New York, New York 10007-1312

      Re:   <u>United States v. Jorge Luis Garza</u>
            07 Cr. 260 (LAK)

Dear Judge Kaplan:

      I write respectfully on behalf of the Government in advance of the *Fatico* hearing scheduled in the above-referenced case for July 7, 2008, at 2:30 p.m.[1]  At issue at the *Fatico* hearing will be the defendant's eligibility for "safety valve" relief from the mandatory ten-year minimum sentence of 21 U.S.C. § 841(b)(1)(A).  The Government maintains that the defendant is ineligible for "safety valve" relief because he has failed to truthfully provide the Government all information and evidence he has concerning the offense to which he pled guilty.  Accordingly, the defendant's request for "safety valve" relief should be denied.

      The sole issue at the *Fatico* hearing will be whether the defendant has sustained his burden of proving that he truthfully informed the Government that he was alone when he delivered approximately 100 kilograms of cocaine to a cooperating witness (the "CW") on November 30, 2006.  The defendant insisted, during a "safety valve" proffer on April 16, 2008, that he was alone in the truck when he made the narcotics delivery.  The Government expects that testimony from the CW and a special agent with the Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), will reveal that, contrary to the defendant's contention, at least one other individual was present with the defendant at the time of the narcotics delivery on November 30, 2006.

---

      [1]      The parties already have made submissions in advance of the defendant's sentencing, which previously was scheduled for June 2, 2008.  The defendant's submission was filed on May 7, 2008, and the Government's submission was filed on May 16, 2008.

The Honorable Lewis A. Kaplan
July 1, 2008

## **Applicable Law**

The defendant's narcotics conviction subjects him to a ten-year mandatory minimum prison sentence. *See* 21 U.S.C. § 841(b)(1)(A). However, the "safety valve" provisions set forth in 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2 entitle a defendant to "a sentence in accordance with the applicable guidelines without regard to any minimum statutory sentence," provided the defendant meets five criteria: (1) the defendant has no more than one criminal history point; (2) the defendant "did not use violence or credible threats of violence or possess a firearm or other dangerous weapon . . . in connection with the offense"; (3) no one was killed or seriously hurt as a result of the offense; (4) the defendant was not an organizer, leader, manager, or supervisor in the offense and was not engaged in a continuing criminal enterprise; and (5) "not later than the time of the sentencing hearing the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(1)-(5); U.S.S.G. § 5C1.2(a)(1)-(5). Pursuant to U.S.S.G. § 2D1.1(b)(6), a defendant who meets these five criteria is also eligible for a two-level reduction in his offense level.

The law in this Circuit is well-settled that the defendant has the burden of proving, by a preponderance of the evidence, that he has met all five of the "safety valve" criteria. *See United States* v. *Tang*, 214 F.3d 365, 371 (2d Cir. 2000); *United States* v. *Ortiz*, 136 F.3d 882, 883 (2d Cir. 1997); *United States* v. *Gambino*, 106 F.3d 1105, 1110 (2d Cir. 1997). With regard to the fifth requirement, this Court has held that "the burden should fall on the defendant to *prove* to the court that he has provided the requisite information if he is to receive the benefit of the statute." *United States* v. *Gambino*, 106 F.3d at 1110 (emphasis in original); *see United States* v. *Jimenez*, 451 F.3d 97, 102 (2d Cir. 2006) (affirming holding in *Gambino* that "the defendant must prove to the sentencing court, by a preponderance of the evidence, that he has provided the requisite truthful information to the government"). This requirement means that a defendant must "'disclose all he knows concerning both his involvement and that of any co-conspirators.'" *United States* v. *Ortiz*, 136 F.3d at 883 (quoting *United States* v. *Ivester*, 75 F.3d 182, 184 (4th Cir. 1996)).

Under this standard, a defendant must provide to the Government prior to sentencing "an exhaustive and truthful portrayal of his knowledge of his offense conduct and all related activity." *United States* v. *Nuzzo*, 385 F.3d 109, 119 n.25 (2d Cir. 2004) (citing *United States* v. *Schreiber*, 191 F.3d 103, 106–09 (2d Cir. 1999)). If a defendant does not disclose all he knows concerning his offense conduct and related activity, the "safety valve" reduction is properly denied. *See United States* v. *Wrenn*, 66 F.3d 1, 3 (1st Cir. 1995) (denying "safety valve" relief where defendant "did not provide the government with *all* of the information and evidence he had concerning the very crime to which he pleaded guilty") (emphasis in original). A defendant must provide objectively truthful information to the Government, and he must subjectively believe that the information he is providing is truthful. *See United States* v. *Reynoso*, 239 F.3d

The Honorable Lewis A. Kaplan
July 1, 2008

143, 146-47 (2d Cir. 2000).

Moreover, as particularly relevant in this case, the Second Circuit has affirmed the denial of "safety valve" relief to defendants who have failed to identify other co-conspirators involved in the offense. *See Tang*, 214 F.3d at 370–71 (affirming denial of "safety valve" relief to a defendant who refused to give information about a co-conspirator based on fear for the safety of his fiancee and family members); *Gambino*, 106 F.3d at 1111–12 (affirming denial of "safety valve" relief to a defendant who claimed to be unable to name his narcotics source). The Second Circuit explained in *Tang* that "[t]he statute makes no exception for failure to furnish information because of feared consequences," and therefore the court refused to create "a fear-of-consequences exception to the safety valve provision." *Tran*, 214 F.3d at 371.

District courts are required by statute (and are advised by the Sentencing Guidelines) to make their own determination as to whether a defendant satisfies the five conditions for "safety valve" relief. *See United States* v. *Jeffers*, 329 F.3d 94, 98 (2d Cir. 2003); *Gambino*, 106 F.3d at 1110. The above standards for "safety valve" relief remain in place following the United States Supreme Court's decision in *United States* v. *Booker*, 543 U.S. 220 (2005). *See, e.g.*, *United States* v. *Jimenez*, 451 F.3d at 102 ("The fact that mandatory minimums have taken on increased significance after *Booker* . . . does not undermine our decision to place the burden of proof on the defendant to demonstrate his eligibility for safety-valve relief."); *see also id.* at 102 ("Because the safety-valve provisions serve as a mechanism for reducing sentences, rather than increasing them . . . *Apprendi*, *Blakely*, and *Booker* do not apply to the operation of the safety valve."); *United States* v. *Crosby*, 397 F.3d 103, 112 (2d Cir. 2005) (noting that, even after *Booker*, "the traditional authority of a sentencing judge to find all facts relevant to sentencing will encounter no Sixth Amendment objection").

### Expected Testimony

On November 30, 2006, the defendant delivered approximately 100 kilograms of cocaine, on behalf of a Mexico-based supplier, to the CW, who was working with ICE and posing as a New York-based drug trafficker. *See* Presentence Investigation Report ("PSR") ¶¶ 11–15. On the day of the delivery, the supplier told the CW over the telephone that he had provided the CW's telephone number to the truck drivers who would be delivering the drugs. Shortly thereafter, the CW received a phone call from the defendant, who directed the CW to meet him in the parking lot of a warehouse in Cranbury, New Jersey, off the New Jersey Turnpike. At the meeting, the CW approached the defendant's tractor-trailer, a rear door on the tractor portion of the truck opened, and the defendant handed the CW, through this rear door, seven white cardboard boxes containing approximately 100 kilograms of cocaine. As the defendant was handing the CW the last box, the truck began to pull out of the parking lot.

ICE agents followed the truck out of the parking lot onto the New Jersey Turnpike, and to

The Honorable Lewis A. Kaplan
July 1, 2008

a nearby truck stop.  At this rest area, the agents observed a second individual walk away from the area where the truck had parked and not return to the truck.  Shortly thereafter, the New Jersey state police identified the defendant, but did not place him under arrest.  The defendant was arrested by ICE agents several months later, on May 9, 2007.  *See* PSR ¶ 28.

      The parties expect to stipulate that the defendant attended a "safety valve" proffer session with the United States Attorney's Office on April 16, 2008, and that, during this proffer session on April 16, 2008, he stated, among other things, that (1) he received approximately 100 kilograms of cocaine at a truck stop in Georgia; (2) after receiving the cocaine in Georgia, he drove to New Jersey where he arranged to meet with an unknown male at a parking lot in New Jersey on November 30, 2006; (3) upon the arrival of the unknown male (the CW), the defendant handed him the boxes containing the cocaine through a door on the passenger's side of the truck; and (4) when the defendant delivered the boxes to the unknown male (the CW) in New Jersey, the defendant was alone in the truck.  The sole issue at the *Fatico* hearing is whether the last statement — that the defendant was alone when he delivered the cocaine to the unknown male (the CW) — is truthful.

      The Government expects to call two witnesses at the *Fatico* hearing.  First, the Government expects that the CW will testify to the details of his receipt of a 100 kilogram shipment cocaine from the defendant on November 30, 2006.  In particular, the Government expects that the CW will testify that, as he approached the tractor-trailer, the defendant began handing the CW white boxes from a small rear door of the tractor portion, behind the passenger door.  As the defendant was handing him the last box, the defendant expressed concern upon seeing another vehicle approach.  At this point, the truck started pulling away as the defendant was leaning out to hand the CW the last box.  The Government expects to argue that, in light of these events, the defendant's claim that he was alone in the truck is implausible.  It would have been impossible for the truck to pull away as the defendant was handing the CW a box, unless another individual was driving the truck.

      Second, ICE Special Agent Carl DeFillippo is expected to testify to surveillance performed following the undercover transaction.  Special Agent DeFillippo was part of the team that followed the defendant's truck onto the New Jersey Turnpike after the delivery to the CW.  The Government expects that Special Agent DeFillippo will testify that he and another ICE agent followed the truck as it traveled on the New Jersey Turnpike and pulled into an Iron Skillet truck stop off Exit 7A.  The Government also expects that Special Agent DeFillippo will testify to observing a second unknown male ("UM-2") walk away from vicinity of where the defendant's truck was parked.  In addition, Special Agent DeFillippo is expected to testify that his partner, ICE Special Agent Brian Herbert, commented that he observed another individual exit the truck.

      On account of a prior commitment, Special Agent Herbert is unavailable to testify at the *Fatico* hearing on July 7, 2008.  I have enclosed a redacted copy of the ICE Report of

The Honorable Lewis A. Kaplan
July 1, 2008

Investigation for the November 30, 2006 seizure of 100 kilograms of cocaine, which includes, among other things, a summary of Special Agent Herbert's observations of UM-2 walking away from the tractor-trailer at the truck stops.

      In light of this anticipated testimony, the Government contests the defendant's eligibility for "safety valve" relief from the ten-year mandatory minimum because has not "truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5). I appreciate the Court's consideration of these matters.

                                      Respectfully submitted,

                                      MICHAEL J. GARCIA
                                      United States Attorney


                      By:    /s/ John P. Cronan
                            JOHN P. CRONAN
                            Assistant United States Attorney
                            Southern District of New York
                            Tel.: (212) 637-2779
                            Fax: (212) 637-2390

Enclosure

cc:    B. Alan Seidler, Esq.
       *By Facsimile*

REQUESTED BY: LEE, STEPHEN M

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE | TECS ACCESS CODE 3 |
| --- | --- |
| REPORT OF INVESTIGATION | PAGE 1 |
| | CASE NUMBER ▮▮▮▮▮▮ OCDETF NO: |

| TITLE: ▮▮▮▮▮▮ |
| --- |
| CASE STATUS: INTERIM RPT |

| REPORT DATE 022807 | DATE ASSIGNED 071106 | PROGRAM CODE ▮▮▮ | REPORT NO. ▮▮▮ |
| --- | --- | --- | --- |

RELATED CASE NUMBERS:

COLLATERAL REQ:

TYPE OF REPORT:
INVESTIGATIVE FINDINGS

TOPIC: SEIZURE OF 100 KILOGRMAS OF COCAINE ON 11/30/06.

SYNOPSIS:
The Office of the Special Agent in Charge New York (SAC/NY) is currently investigating a narcotics smuggling organization, which is based in Monterrey, Mexico with cells operating in Texas, Georgia and New York. This organization smuggles multi-kilograms of cocaine across the southwest border utilizing tour buses and tanker trucks to transport the cocaine to various cities in the United States for distribution.

This report serves to document the seizure of 100 kilograms of cocaine on November 30, 2006. Present during the operation were SAC/NY S/A Stephen Lee, SA Michael Buckley, SA Chris McClellan, SA Daniel Herbst, SA Ted Segar, SA Brian Herbert and SA Carl DeFillippo.

| DISTRIBUTION: SACNY CAMX | SIGNATURE: LEE  STEPHEN  M  SENIOR SPEC AGENT |
| --- | --- |
| | APPROVED: FORESTA  JODY  A  OI GRP SUPERVISOR |
| | ORIGIN OFFICE: NY NEW YORK, NY - SAC | TELEPHONE: ▮▮▮▮▮ |
| | | TYPIST: LEE |

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY<br>ICE | PAGE 2 |
|---|---|
| REPORT OF INVESTIGATION<br>CONTINUATION | CASE NUMBER ▓▓▓▓ |
| | REPORT NUMBER: ▓▓▓▓ |

CASE PROGRAM CODES:

▓▓ CONTROLLED SUBSTANCE   021 TITLE 21 CROSS DESIG

OFFICIAL USE ONLY

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE 3 |
|---|---|
| REPORT OF INVESTIGATION CONTINUATION | CASE NUMBER ▮▮▮▮ |
| | REPORT NUMBER: ▮ |

DETAILS OF INVESTIGATION:

Reference is made to all previous Reports of Investigation under this file title and case number ▮▮▮▮▮.

The Office of the Special Agent in Charge New York (SAC/NY) is currently investigating a narcotics smuggling organization, which is based in Monterrey, Mexico with cells operating in Texas, Georgia and New York. This organization smuggles multi-kilograms of cocaine across the southwest border utilizing tour buses and tanker trucks to transport the cocaine to various cities in the United States for distribution.

On November 28, 2006 SA-▮▮▮-NY received a call from FNU LNU AKA LIC, utilizing Nextel number 52*222*17786 who indicated to SA-▮▮▮-NY that he would be receiving 100 kilograms of cocaine. LIC told SA-▮▮▮-NY that 50 kilograms of cocaine are for him and that 50 kilograms are for someone else.

On November 29, 2006, SA-▮▮▮-NY received a call from Jaime Humberto GUTIERREZ GONZALEZ utilizing Nextel number 62*214705*1 who indicated he should receive the 100 kilograms of cocaine either tonight or tomorrow.

On November 30, 3006 SA-▮▮▮-NY received a call from LIC who indicated the drivers had arrived with the shipment and he will give the driver, SA-▮▮▮-NY's number to make arrangements for SA-1236-NY to receive the cocaine. A short time after the call with the LIC, SA-▮▮▮-NY received a call from FNU LNU AKA AMIGO (UM1) utilizing Nextel number 157*237*2544 who indicated to SA-▮▮▮-NY he was approximately four mile off exit 8A off Interstate 95 in New Jersey. Soon after the call with AMIGO, SA-▮▮▮-NY received a call from LIC who asked SA-▮▮▮-NY if he has heard from the guy yet? SA-▮▮▮-NY told LIC he had already spoken to the guy. LIC told SA-▮▮▮-NY to call him when everything is done. After that call SA-▮▮▮-NY received a call from GUTIERREZ GONZALEZ who asked SA-▮▮▮-NY if he had received the 100 kilograms of cocaine yet? SA-▮▮▮-NY told GUTIERREZ GONZALEZ he had not received the 100 kilograms of cocaine yet. As SA-▮▮▮-NY was driving to meet AMIGO he received a call from FNU LNU utilizing Nextel number 157*695*1723, who told SA-▮▮▮-NY he was the boss for the driver and that the driver needed to leave soon so how long before SA-▮▮▮-NY would meet up with the driver?

At approximately 1720 hrs, SA-▮▮▮-NY drove into the parking lot located behind 1 Broadway, Cranberry, NJ and met with AMIGO and another unknown male (UM2) described as a Hispanic male, medium build, small mustache, dark hair,

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE 4 |
|---|---|
| REPORT OF INVESTIGATION CONTINUATION | CASE NUMBER: ▮▮▮▮▮ |
|  | REPORT NUMBER: ▮ |

approximately 170 pounds, wearing blue shirt and brown pants. SA-▮▮-NY walked up to the passenger's side door of the tractor-trailer and was handed seven white cardboard boxes containing 100 kilograms of a white powdery substance. Once the transfer was complete the tractor-trailer closed its door and drove out of the parking lot. SA-▮▮-NY exited the parking lot followed by SA Stephen Lee and SA Michael Buckley. SA-▮▮-NY was followed to a predetermined meeting location, once at the location SA Lee took custody of the seven boxes. The boxes were subsequently transported back to the SAC/NY office for processing where a field test was conducted by SA Buckley on the white powdery substance, which field tested positive for cocaine.

After SA-▮▮-NY received the cocaine GUTIERREZ GONZALEZ called SA-▮▮-NY and asked how the delivery went? SA-▮▮-NY told GUTIERREZ GONZALEZ that everything went OK. After that call SA-▮▮-NY called Francisco Javier CASTRO LOMELI who was utilizing Nextel number 62*209849*1 and CASTRO LOMELI asked SA-▮▮-NY if he received the documents? SA-▮▮-NY told CASTRO LOMELI everything went well.

SA Carl DeFillippo and SA Brian Herbert followed the tractor-trailer to a truck stop / rest stop off exit 7A off Interstate 95 in New Jersey, where the Trooper Blaise Pecenak of the New Jersey State Police Commercial Carrier Safety Inspection Unit stopped the tractor-trailer and identified the driver of the tractor-trailer as Jorge Luis GARZA who produced a Texas drivers license number 11575170 for identification. The tractor-trailer displayed Texas registration R7RW20 and the trailer displayed Oklahoma registration 5348FD. When Trooper Pecenak stopped the tractor-trailer he found one occupant inside the tractor-trailer. Prior to the arrival of Trooper Pecenak SA Herbert observed an unknown male with a beard, wearing a plaid shirt and hat walking away from the tractor-trailer.

This investigation continues.

TECS IDENTIFYING DATA:



OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.